## WHEELER v. UNITED STATES.

No. 74–52.

United States Court of Claims.

Dec. 2, 1952.

Huston Thompson, Washington, D. C., for plaintiff. Oscar P. Mast, Washington, D. C., on the briefs.

Donald D. Webster, Baltimore, Md., Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

This proceeding is brought by a former employee of the Office of the Coordinator of Inter-American Affairs, now part of the State Department, to recover back salary totalling $24,276.16 allegedly due him as the result of a purported denial of his right, under the provisions of the Act of June 23, 1943, ch. 142, 57 Stat. 162, as amended, 50 U.S.C.A.Appendix, §§ 1471–1475, sometimes referred to herein as the Merchant Marine Reemployment Act, to be reemployed in the position held by him at the time of his acceptance of a commission as an officer in the United States Merchant Marine during World War II. As the material facts are not in issue, both parties seek summary judgment on the question of whether or not plaintiff's position, which he held under a war service indefinite appointment, was a permanent position entitling him to the benefits of the statute.

Plaintiff is a writer with extensive experience in the newspaper and magazine field, having formerly been editor of Harper's Weekly, The San Francisco News, and other well-known publications. Because of the occurrence of cataracts on both eyes, plaintiff was forced to retire temporarily from his profession during the period from 1936 to 1940. However, following the restoration of his sight, plaintiff obtained, on April 30, 1942, a war service indefinite (Regulation V) appointment as a Business Specialist (Information Publicist), CAF–11, $3,800 per annum, in the Press Division of the Office of the Coordinater of Inter-American Affairs, hereinafter referred to as the OCIAA. Plaintiff remained in this position through 1944, and was given efficiency ratings of "very good" and "excellent" during this period. On June 7, 1944, plaintiff received a promotion to Grade CAF–12 with a salary of $4,600 per annum.

On October 31, 1944, plaintiff was contacted by the training organization of the War Shipping Administration to determine whether he would be interested in a position as editor of the service publication of the United States Maritime Service, known as *Mast Magazine*. Plaintiff at first was non-

receptive to this proposal, but upon being assured that he would have "reemployment rights" with the OCIAA, agreed to accept the post. Thereafter, on January 3, 1945, plaintiff was commissioned a Lieutenant Commander, United States Maritime Service, with a salary of $3,000 per annum plus allowances.

Shortly after his entry into the Maritime Service, plaintiff received a letter from the United States Civil Service Commission, dated December 27, 1944, authorizing his transfer from the OCIAA to the War Shipping Administration *without reemployment rights*. As this condition was contrary to the earlier assurances given to him, plaintiff protested immediately to the Civil Service Commission against its inclusion in the transfer notice. In response to this protest, on January 11, 1945, the Executive Director of the Civil Service Commission advised plaintiff that the earlier notice was being amended, and that his transfer would carry with it "certain reemployment rights" under the provisions of the Merchant Marine Reemployment Act. Confirmation of this action by the OCIAA was received by plaintiff on January 16, 1945.

For the next two years plaintiff devoted his efforts to editing the official publication of the Maritime Service, and received, in recognition of his fine work, a promotion to the rank of Commander. Due to a reduction in appropriations, plaintiff was advised by the Commandant of the Maritime Service on January 20, 1947, that his position as editor of *Mast Magazine* would have to be eliminated, and that effective February 28, 1947, he would be relieved from active duty. Upon receipt of this notice, plaintiff, on January 23, 1947, requested the Maritime Commission to arrange for his return to his former position in the State Department,[1] and on January 24, 1947, applied to the Civil Service Commission for reemployment under the provisions of 50 U.S.C.A.Appendix, §§ 1471–1475, supra, in his former position effective March 1, 1947. Inasmuch as plaintiff's return to the State Department could not be effected immediately, the Commandant of the Maritime Service, on February 5, 1947, extended plaintiff's period of active service for one month, i. e., through March 31, 1947, instead of February 28, 1947.

During the first part of February 1947 plaintiff was told by the State Department that he would be reemployed by May 1, 1947. Accordingly, on February 17, 1947, plaintiff submitted to the State Department a formal application for reemployment to supplement his earlier informal requests. However, during the six-week period which followed, plaintiff received conflicting information as to the possibility of his reemployment. The Commandant of the Maritime Service advised plaintiff on March 13, 1947, that he had received an assurance from the State Department that plaintiff would be reinstated immediately. But several days later, on March 17, 1947, the Division of Departmental Personnel of the State Department sent the following letter to plaintiff:

"As a War Service Indefinite employee your reemployment rights do not entitle you to a position in the Department unless there is a vacancy for which you qualify or unless you can cause a separation through a reduction in force of an employee with lower retention preference. Because of budgetary limitations the Department has had to abolish many vacant positions and to effect reductions in force in several areas. As a result, no suitable vacancies exist to which you can be appointed. It will, therefore, be necessary to resort to a reduction in force procedure to determine if there is an employee at your competitive level in the Department who has lower reten-

1. On March 23, 1945, by Executive Order No. 9532, 3 C.F.R., 1945 Supp., p. 57, U.S.Code Cong.Service 1945, p. 1226, the name of the OCIAA was changed to Office of Inter-American Affairs. By Executive Order No. 9608 of August 31, 1945, 3 C.F.R., 1945 Supp., p. 109, 50 U.S.C.A.Appendix, § 601 note, the functions, personnel, records, and property of the Office of Inter-American Affairs were transferred to the Interim International Information Service in the Department of State.

tion preference under Civil Service rules and regulations."

On March 31, 1947, plaintiff was released from active duty with the Maritime Service, and was given a certificate of "substantially continuous service." Plaintiff at once contacted the Division of Departmental Personnel of the State Department which informed him at this time that he would be reemployed within 30 days. However, plaintiff was not completely satisfied with this information, and on April 14, 1947, appealed directly to the Secretary of State requesting recognition of his reemployment rights. This appeal went unheeded, and plaintiff received no further information until September 17, 1947, when he was notified that the State Department wanted him to return as soon as possible. Plaintiff made the necessary preparations and underwent a physical examination, but his reemployment was not forthcoming as anticipated. On October 15, 1947, plaintiff once again contacted the Division of Departmental Personnel with respect to his position and was advised that if he were restored to duty he would be displaced almost immediately because of the State Department's program of hiring displaced career employees with competitive status who had been separated from war agencies by reductions in force. Upon receipt of this information, plaintiff requested that his reemployment rights be held in abeyance indefinitely. Plaintiff was never reemployed by the State Department, and finally, on April 11, 1950, obtained a separation for his "war transfer leave without pay" status in order to obtain a refund of his retirement deductions.

Sections 1471–1475 of Title 50 United States Code Annotated Appendix, which create the reemployment rights of Merchant Marine personnel serving in World War II, provide in material part as follows:

"§ 1471. (a) When used in this Act (sections 1471–1475 of this Appendix) the term 'service in the merchant marine' means service as an officer or member of the crew on or in connection with a vessel documented under the laws of the United States * * *,

as an enrollee in the United States Maritime Service on active duty, * *.

"(b) Any person entering service in the merchant marine after May 1, 1940, and before the termination of the unlimited national emergency declared by the President on May 27, 1941, who, in accordance with rules and regulations prescribed by the Administrator, War Shipping Administration, completes a period of substantially continuous service in the merchant marine, shall be entitled to a certificate to that effect from the Administrator upon completion of such period, * *.

"§ 1472. (a) In the case of any such person who, in order to perform service in the merchant marine, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within ninety days after completion of such service, * * *

"(A) if such position was in the employ of the United States Government, * * *, such persons shall be restored to such position or to a position of like seniority, status, and pay, without regard to whether such position shall have been covered into the classified civil service during the period of his military, naval or merchant marine service;

* * * * * *

"(d) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (a) of this section shall be considered as having been on furlough or leave of absence during his period of service, shall be so restored without loss of seniority, * * * and shall not be discharged from such position without reasonable cause within one year after such restoration.

* * * * * *

"§ 1475. The Administrator, War Shipping Administration, may make such rules and regulations as he deems

necessary or appropriate to carry out the provisions of this Act.[2]"

Plaintiff contends that inasmuch as he complied with the terms of the above-quoted statute in (1) having obtained a certificate of substantially continuous service from the Maritime Service, (2) being still qualified to perform his duties as a Information Publicist, and (3) having made timely application to the State Department for reinstatement, he should have been re-employed by the State Department on or about April 1, 1947, in his former position or a similar position of like seniority, status, and pay. The failure of the State Department to extend to him these rights entitles him, plaintiff insists, to recover back pay for the period from April 1, 1947, i. e., the effective date of his requested reinstatement, to December 31, 1951, less amounts received from other employment during that period. Although admittedly his position with the OCIAA was held under a war service indefinite appointment, plaintiff urges that it was "other than a temporary position" within the meaning of 50 U.S.C.A. Appendix, § 1472(a) because, being for the duration of the war and six months thereafter, it was for an *indefinite* period.

Defendant insists that the reemployment rights created by the Merchant Marine Reemployment Act do not apply to persons like plaintiff who held positions in the United States Government under war service indefinite appointments because such positions were temporary in nature. In support of this argument defendant relies upon an opinion by the Attorney General of the United States, 40 Op.Atty.Gen. 271, and upon Powell v. Royall, D.C., 80 F.Supp. 820.

War service indefinite appointments, such as plaintiff's were made possible by the suspension on March 16, 1942, of the regular Civil Service regulations for the wartime period under Executive Order No. 9063 of February 16, 1942, 3 C.F.R., Cum. Supp., p. 1091, U.S.Code Cong.Service 1942, p. 1228, and by the substitution of War Service Regulations promulgated by the Civil Service Commission. Under the terms of War Service Regulation V, 5 C.F.R., Cum.Supp., § 18.5(b), war service appointees did not acquire a classified Civil Service status, but rather were limited to a period not to exceed the legal duration of the war, and six months thereafter.

The question of whether war service indefinite appointees held permanent or temporary positions first arose in connection with the reemployment rights created by the Selective Training and Service Act of September 16, 1940, ch. 720, § 8(b) and (c), 54 Stat. 885, 890, 50 U.S.C.App. § 308(b) and (c), now 50 U.S.C.A.Appendix, § 459 (b, c), which rights were substantially the same as those created by the terms of 50 U.S.C.A.Appendix, §§ 1471–1475, supra.[3] The problem was referred to the Attorney General for consideration, 40 Op.Atty.Gen.

2. The War Shipping Administration was terminated as of September 1, 1946, and all functions, powers, etc. were transferred to the United States Maritime Commission for the purpose of liquidation by December 31, 1946, under authority of the Act of July 8, 1946, ch. 543, § 202, 60 Stat. 501, 50 U.S.C.A.Appendix, § 1291 note.

3. Section 308(b) and (c) of Title 50 U.S.C.App., provides in material part as follows:

 "(b) In the case of any such person who, in order to perform such training and service [*in the land or naval forces*], has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3)

makes application for reemployment within ninety days after he is relieved from such training and service * * *
 "(A) if such position was in the employ of the United States Government, * * * such person shall be restored to such position or to a position of like seniority, status, and pay;
 . * * * * *
 "(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, * * * and shall not be discharged from such position without cause within one year after such restoration." [Italicized material inserted.]

271, and the following conclusion was reached:

"War Service appointees are largely of two classes, namely, interim employees * * * [*appointed to continue at most only until the former permanent holders of the positions, who left them to serve in the armed forces, have completed that service, and have been reinstated in the positions*] and employees appointed to emergency positions made necessary to meet war needs. These emergency positions will in most cases cease to exist upon the termination of the war. In my opinion the positions of War Service appointees of both these classes are "temporary" within the meaning of section 8 of the Selective Training and Service Act. * * *

* * * * * *

"In holding that War Service appointees are not entitled to demand the benefits of section 8, I do not mean to imply that similar benefits cannot be administratively extended to them in proper cases. In my opinion such benefits may and should be extended to War Service appointees when administratively possible." [Italicized material inserted.]

 This opinion, we believe, correctly summarizes the *statutory* rights of members of the Armed Forces and Merchant Marine who claim reemployment rights to positions held under war service indefinite appointments. Such positions, being only for the duration of the war, and being designed to fill emergency needs, cannot be said to be permanent in nature. While the opinion of the Attorney General did not concern itself directly with the provisions of 50 U.S.C.A.Appendix, §§ 1471–1475 which set forth the reemployment rights of Merchant Marine personnel, we think that the conclusions therein may be safely applied to the Merchant Marine because of the similarity in the terms and purposes of the two acts. In fact, the legislative history of the Merchant Marine Reemployment Act, S.Rep. 262. 78th Cong. 1st Sess., points out that the "bill ·follows substantially provisions of law applicable to persons entering the armed forces of the United States." Cf. H.Rept. 106, 78th Cong., 1st Sess. Therefore, we conclude that plaintiff, as a war service indefinite appointee, did not have a statutory right under the Merchant Marine Reemployment Act to reemployment in the State Department.

In pursuance of the recommendation by the Attorney General that war service indefinite employees *should* be entitled to reemployment rights "in proper cases," the Civil Service Commission issued rules and regulations which closely followed the terms of the Selective Training and Service Act, supra, and which provided for what were *designated as regulatory reemployment rights*. The regulations in effect at the time plaintiff terminated his active duty in the Merchant Marine on March 31, 1947, were issued by the Civil Service Commission on February 6, 1946, effective 30 days from February 4, 1946, 5 C.F.R., 1946 Supp., § 27.17, and provided as follows:

"§ 27.17 *Restoration after return from military service and service in the Merchant Marine*—(a) *Persons entitled to restoration by law*—(1) *After military service.* Any civilian employee of the Executive branch of the Government covered by the Selective Training and Service Act or other statutes providing for reemployment after military service who has left or leaves his position (other than a temporary position) in order to perform active military or naval service for the United States and (i) is honorably separated from such service, (ii) is still qualified to perform the duties of such position, and (iii) makes application for reemployment within ninety days after he is relieved from such active duty or service * * * shall be restored within thirty days to the position he left or, if that position does not exist, to a position of like seniority, status, and pay: *Provided,* That failure of the agency to act within the said period will not affect the employee's right to restoration: *Provided further,* That the employee's tenure with the agency will determine whether he left

other than a temporary position and the fact that the last position the returning veteran held through promotion, or reassignment carried a time limitation will not of itself affect his right to be restored to that position or one of like seniority, status, and pay.

"(2) *After service in the Merchant Marine.* Any civilian employee of the United States Government, * * * who, after May 1, 1940, has left or before the termination of the unlimited national emergency declared by the President on May 27, 1941, leaves his position (other than a temporary position) in order to perform service in the Merchant Marine and (i) receives a certificate of substantially continuous service, (ii) is still qualified to perform the duties of such position, and (iii) makes application for reemployment within forty days [4] after completion of such service, shall be restored to such position or to a position of like seniority, status, and pay.

"(b) *Persons not entitled to restoration by law.* (1) Any person having appointment under the civil service rules or the war service regulations *not limited to one year or less* who left or leaves a temporary position (within the meaning of the statutes providing for restoration) in any department or agency of the Executive branch of the Federal Government, in order to perform active military or naval service for the United States and (i) is honorably separated from such service, (ii) is still qualified to perform the duties of such position, and (iii) makes application for reemployment within ninety days after he is relieved from such active duty or service * * * shall be reemployed within thirty days either in the position he left or in a position of like seniority, status, and pay in the same geographical locality in which he was employed formerly: *Provided,* That such reemployment will not re- quire the removal through reduction in force of any employee with higher retention preference: *Provided further,* That upon establishment of a register of eligibles for making probational appointment, the provisions of this section will cease to be operative with respect to restoration of persons without classified civil service status to any positions for which the register is appropriate: *Provided further,* That failure of the agency to act within the said period will not affect the employee's right to restoration: *And provided further.* That the fact that the last position the returning veteran held through promotion or reassignment carried a time limitation will not of itself affect his right to be restored to that position or one of like seniority, status, and pay. [Italics added]

* * * * * *

"(c) *Transfer of functions.* Whenever a function or activity is transferred from one agency to another agency or agencies, arrangements shall be made by the agencies involved and, when necessary, by the Civil Service Commission and the Bureau of the Budget, for the receiving agency or agencies to assume the reemployment obligations to those former employees who left such function or activity in order to enter the armed forces. * *"

In promulgating these regulations, the Civil Service Commission was not unaware of the provision in 50 U.S.C.A.Appendix, § 1475 that the War Shipping Administrator, or his successor, should promulgate the rules and regulations necessary to carry out the provisions of the Merchant Marine Reemployment Act. The Civil Service Commission, in the explanatory text which accompanied these regulations, expressly referred to § 1475 and stated that (1) prior approval of the Commission was not required for restoration of Merchant Marine personnel, (2) the reemployment rights of Merchant Marine personnel were not nec-

---

4. By the Act of August 8, 1946, ch. 867, 60 Stat. 906, which amended the provisions of the Act of June 23, 1943, § 2(a), supra, 50 U.S.C.A.Appendix, § 1472(a), the period of making application for reemployment was extended from 40 days to 90 days.

essarily covered in these provisions, but (3) the Commission *could* include persons who had served in the Merchant Marine among those entitled to the benefits and policies prescribed by it for members of the Armed Forces where such procedures and policies were *distinct* from those established under the Merchant Marine Reemployment Act by the War Shipping Administrator. Federal Personnel Manual, ch. R6, p. 1, July 8, 1946.

An examination of the revised rules and regulations promulgated on September 11, 1946, by the United States Maritime Commission, as successor to the War Shipping Administration, and in effect at the time plaintiff attempted to assert his reemployment rights, reveals nothing which is inconsistent with or in any way related to the regulations of the Civil Service Commission set forth above. 11 F.R. 10770, 46 C.F.R., 1946 .Supp., § 304.75-.80. Rather, the scope of these regulations is restricted primarily to definitions of the terms "service in the merchant marine" and "substantially continuous service" as used in the Merchant Marine Reemployment Act.

■ Because of this lack of any reference whatsoever .in the Maritime Commission's regulations to the reemployment rights of Merchant Marine personnel who held war service indefinite appointments, and because of the Civil Service Commission's determination that its regulations could be applied to Merchant Marine personnel in such a situation, we hold that plaintiff was entitled under § 27.17(b) and (c) of the Civil Service Regulations to a regulatory right of reemployment in his temporary position as Information Publicist with the State Department. Plaintiff satisfied all of the requirements of the regulations as he possessed a certificate of substantially continuous service in the Merchant Marine, was still qualified to perform the duties of his position, made application for reemployment well within the prescribed period, and sought return to a temporary position not limited to one year or less. The State Department, as successor to the OCIAA, to which plaintiff properly directed his reemployment application under § 27.17(c) of the Civil Serv-

ice regulations, supra, was in our opinion guilty of a flagrant disregard of plaintiff's reemployment rights when it failed to reinstate him, especially when it is borne in mind that both the Civil Service Commission and the OCIAA had recognized at the time of plaintiff's entry into the Merchant Marine that he possessed "certain reemployment rights." Moreover, the statement given to plaintiff by the State Department on October 15, 1947, that if he were reemployed, he would immediately be subject to displacement, was contrary to the provisions of 50 U.S.C.A.Appendix, § 1472 (d) which prohibited the removal for a period of one year of persons found to possess reemployment rights, except for cause. In view of this disregard of the reemployment rights which plaintiff possessed under the Civil Service Regulations, and in view of the prohibition placed upon the removal for a period of one year of persons entitled to reemployment rights, we think that plaintiff is entitled to recover the salary of his position for the period of one year from April 1, 1947, the effective date of his requested reemployment, less amounts received by him from other employment during that period.

In selecting the date of April 1, 1947, as the time when plaintiff should have been reemployed, we are not unmindful of the statements in the letter of March 17, 1947, from the State Department to plaintiff that "your reemployment rights do not entitle you to a position unless you can cause a separation through a reduction in force of an employee with lower retention preference," and that it would "be necessary to resort to a reduction in force procedure to determine if there is an employee at your compensation level in the Department who has lower retention preference." This statement apparently has reference to the proviso contained in the Civil Service Regulations, § 27.17(b), supra, that the reemployment rights created by regulation "will not require the removal through reduction in force of any employee with higher retention perference." If the State Department had actually determined that the reemployment of plaintiff would necessitate the removal of an employee having a higher

retention preference, and if the State Department had actually notified plaintiff of such a determination, plaintiff's regulatory right to reemployment would not have accrued, and the action of the State Department in not reemploying plaintiff would have been proper. There is no indication, however, that such a determination was ever made by the State Department, or that if it were made, plaintiff was ever so advised. Rather, the letter by the State Department dated March 17, 1947, merely points out that plaintiff *might not* qualify for reemployment, but does not state that plaintiff *has failed* to qualify for reemployment. Furthermore, the action of the State Department on September 17, 1947, in notifying plaintiff that it wanted him to return as soon as possible demonstrates that the State Department itself did not regard plaintiff's reemployment rights as being barred by this proviso. We, therefore, conclude that plaintiff's right to reemployment was not affected by either the proviso in § 27.17(b) of the regulations, or by the letter of March 17, 1947.

Although the decision of the United States District Court for the District of Columbia in Powell v. Royall, supra, which is relied upon by defendant, appears at first glance to be *contra* to our conclusions, a comparison of that decision with our views set forth above reveals that they may be reconciled. The District Court had before it the identical question now before this court, although arising under the provisions of § 3 of the Act of August 27, 1940, ch. 689, 54 Stat. 859, 50 U.S.C.App. § 403. The District Court concluded, on the basis of the opinion of the Attorney General, supra, and on the basis of a memorandum issued by the Civil Service Commission and set forth in the Federal Personnel Manual, ch. R6, p. 801, that war service employees of the Government were temporary employees and did not have a statutory right of reemployment. Our conclusion with respect to the statutory reemployment rights of the plaintiff in the instant action is the same. However, the District Court did not take into consideration, as we have done, the reasonable determination by the Civil Service Commis-

sion, upon which rests the responsibility for the administration of the personnel program of the Executive Branch of the Government, to extend reemployment rights to war service employees by means of well-defined regulations. To the extent that this court and the District Court consider the same matter, viz., the right to reemployment under statute, the conclusions reached are identical.

In determining the amount of salary which plaintiff was entitled to receive during the year that his reemployment rights were denied, the provisions of § 402(b) of the Federal Employees Pay Act of June 30, 1945, ch. 212, title IV, 59 Stat. 299, 5 U.S.C. § 667(b)(4) shall be given their full force and effect. This section provides as follows:

"That any employee, (A) who, while serving under permanent, war service, temporary, or any other type of appointment, has left his position to enter the armed forces or the merchant marine, * * *, (B) who has been separated under honorable conditions from active duty in the armed forces, or has received a certificate of satisfactory service in the merchant marine, * * *, and (C) who, under regulations of the Civil Service Commission or the provisions of any law providing for restoration or reemployment, or under any other administrative procedure with respect to employees not subject to civil service rules and regulations, is restored, reemployed, or reinstated in any position subject to this section, shall upon his return to duty be entitled to within-grade salary advancements without regard to paragraphs (2) and (3) of this subsection, and to credit such service in the armed forces, in the merchant marine, * * * toward such within-grade salary advancements. As used in this paragraph the term 'service in the merchant marine' shall have the same meaning as when used in sections 1471–1475 of Appendix to Title 50."

Thus under this section the salary to which plaintiff was entitled on April 1, 1947, must have reflected due credit, as of

that date, for his Merchant Marine service for the purpose of within-grade salary advancements. Plaintiff's recovery here must be measured accordingly.

We conclude that although plaintiff did not hold a permanent position in the Government at the time of his entry into the Merchant Marine, and was not, therefore, entitled to statutory reemployment rights, he was nevertheless entitled to fixed regulatory rights of reemployment in his former position; that these rights to reemployment were violated by the State Department; and that as a result of the violation plaintiff is entitled to recover the salary of his position for a period of one year from April 1, 1947, including any within-grade salary advancements to which he was entitled as of that date less sums received from other employment. Accordingly, defendant's motion for summary judgment is denied, and plaintiff's motion for summary judgment is granted. The entry of judgment will be suspended pending the filing of a stipulation by the parties showing the exact amount of the judgment to be awarded plaintiff, computed in accordance with the opinion of the court.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.